Peter E. Perkowski (SBN 199491)
peter@perkowskilegal.com
PERKOWSKI LEGAL, PC
445 S. Figueroa Street
Suite 3100
Los Angeles, California 90071
Telephone: (213) 426-2137

Attorneys for Plaintiff
JEFFERY R. WERNER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY R. WERNER,<br><br>*Plaintiff*,<br><br>v.<br><br>VIACOMCBS INC.,<br><br>*Defendant*. | Case No.: 2:20-cv-5983<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>*Jury Trial Demanded* |

Plaintiff Jeffery R. Werner, for its Complaint against defendant ViacomCBS Inc. d/b/a Viacom Media Networks, alleges as follows:

1. This is an action for direct, contributory, and vicarious copyright infringement brought by plaintiff, the holder of all copyrights to the photograph described below (the "Photograph"), against defendant under the copyright laws of the United States, 17 U.S.C §101, et seq., requesting actual or statutory damages and other relief, stemming from defendants' unauthorized exploitation of the Photograph.

**JURISDICTION AND VENUE**

2. This action arises under the Copyright Act of 1976, Title 17 U.S.C. § 101 et seq.

3. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question) and § 1338 (copyright).

4. This Court has personal jurisdiction over the defendant because, on information and belief, it is registered to do and is doing business in the State of California and in this judicial district, and the claims asserted arise out of defendant's business conducted in the State of California.

5. Venue in this judicial district is proper, either under 28 U.S.C. § 1391(b)(2), and/or 28 U.S.C. § 1400(b).

## PARTIES

6. Plaintiff Mr. Werner is an individual residing in Los Angeles, California. He is the owner of the copyright of the photograph that is the subject of this action.

7. At the time of the acts alleged below, defendant ViacomCBS Inc. *d/b/a* Viacom Media Networks, on information and belief now known as ViacomCBS Domestic Media Networks ("VMN"), was a Delaware corporation that, on information and belief, had its principle place of business in the State of New York. ViacomCBS, evidenced by documents on file with the California Secretary of State website, is registered to do business in the state of California.

## BACKGROUND FACTS

**A. Mr. Werner, A Professional Photographer**

8. Mr. Werner has over 35 years of experience as a professional photographer. His work has appeared in magazines world-wide as covers, features, and editorial coverage in publications such as *Life, Time, Newsweek, People, Marie Claire, FHM, Smithsonian, Playboy, Maxim, In Touch, Daily Mail, Penthouse, Psychology Today, Stern, Country Weekly, Page Six Sunday Magazine (NY Post)* and many others. He has had over 100 double-page spreads in the *National Enquirer*. His photographs of amazing stunts, performed with motorcycles, airplanes, trains, and other vehicles, were featured on such television shows as: *That's Incredible!, The World's Greatest Stunts, Stuntmasters, Guinness World Record Spectaculars, Ripley's*

*Believe It Or Not*, and *I Dare You*. Mr. Werner's portfolio of images has also been featured in a 16-page spread in both French and Italian *Photo* magazines, with pickups appearing in *Panorama* magazine (Netherlands), *Stern* (Germany), *Photo District News* (US), *Mad* magazine (France), and the 25th anniversary issue of *New Look* magazine. Many of his iconic photographs were also chosen to be published in the TALK/MIRAMAX coffee table book *The National Enquirer, Thirty Years of Unforgettable Images*.

9. Mr. Werner is a member of the Los Angeles Press Club and the American Society of Media Photographers and is the president of an editorial photo syndication agency, Incredible Features, Inc.

10. Mr. Werner has developed a specialty in photographing stunts and stuntmen and women. His attention to detail, even while filming dangerous stunts with his signature 15-camera remote photography set-up, has exposed him to the danger involved in getting very close to the action. Capturing these explosive photo sequences landed him the exclusive honor of being the only still photographer inducted into The Stuntworld Hall of Fame. Featured on a segment of "The Adventures" TV show, he was referred to as the "da Vinci of daredevil photography" (https:// helldriversmovie. wordpress.com/2008/11/10/incredible-stunts-book/). French *Photo* called him the "incredible but true photographer," and Caesar's Palace chose him as the official photographer for Robbie Knievel's jump across several fountains, an event that was covered by numerous magazines and TV outlets around the world, including *Life* and *Sports Illustrated*. Mr. Werner's body of stunt photography is displayed in the 2009 coffee table book, *Incredible Stunts: The Chaos, Crashes and Courage of the World's Wildest Stuntmen and Daredevils*.

11. Mr. Werner is also well-known for his work with exotic animals, celebrities in their homes, remote aboriginal peoples, sideshow eccentrics, and people who have overcome incredible obstacles. Mr. Werner has a growing "outsider art" reputation, and his work was the subject of a retrospective gallery exhibition at the

Annenberg Space for Photography in Los Angeles. Vince Streano—photographer and President Emeritus of the American Society of Media Photographers—has said that "Jeff is the Diane Arbus of the 21st century" because he crosses social lines to celebrate his subjects.

12. The uniqueness of Mr. Werner's portfolio, and his talent, have resulted in substantial licensing opportunities throughout the years on which he relies to research and fund future photo shoots and to pay himself and his staff at Incredible Features. Mr. Werner has always maintained the publishing rights to his works, knowing they would provide the revenue to produce his next story. Mr. Werner relies on income generated from licensing his photographs for his living. Mr. Werner employs a staff dedicated to researching new opportunities for photo shoots, as well as managing, monetizing, and policing the intellectual property of Mr. Werner's portfolio.

13. Unfortunately, a multitude of works by Mr. Werner are now reproduced on television and the internet, without authorization and without compensation to Mr. Werner, as a result of intellectual property theft. The magnitude of this theft is a baleful compliment to his talents: web pirates and other infringers, who pay nothing for stolen content, can select the best.

14. Mr. Werner's syndication company Incredible Features, which licenses his works, has now been forced to incur costs to discover piracy and to help collect the revenues due to him from the tide of copyright infringements. The policing of his intellectual properties has become a cumbersome and expensive task which adds to the cost of every image produced. As in the past, despite the constant struggle against infringement and internet piracy, Mr. Werner still relies on these revenues to produce his next incredible story.

**B.    VMN Operates the Cable Television Network—Comedy Central.**

15. ViacomCBS, through its subdivision VMN, oversees the operations of several television networks, including Comedy Central.

16.     VMN operates Comedy Central, and its employees or agents are responsible for the content that broadcasts on Comedy Central, including *The Jim Jeffries Show*.

17.     VMN owns and maintains the Comedy Central website accessible at http://www.cc.com, and its employees or agents are responsible for the content that appears on the website, including episodes of *The Jim Jeffries Show*.

**C.     Viacom Infringed Mr. Werner's Copyright.**

18.     Mr. Werner is the author of a photograph taken in 2013 depicting a woman posing in her living room surrounded by various taxidermized animals (the "Huntress"). The photograph was registered with the United States Copyright Office as Registration No. VA 1-920-155 (eff. December 23, 2013), attached as Exhibit 1.

19.     VMN, on an episode of its television program entitled *The Jim Jeffries Show* (the "Episode"), reproduced and displayed an unlicensed version of the Huntress Photograph on or about July 25, 2017, without authorization, approval or permission to do so (the "Huntress Accused Work"). In the Episode, the Huntress Accused Work appears for approximately 2 seconds in the center of the screen and approximately 20 seconds in the top left corner of the screen while comedian and host Jim Jeffries comments on the woman depicted in the Huntress Photograph.

20.     The copy of the Huntress Photograph that VMN reproduced and displayed contained a watermark copyright notice visible in the upper right-hand corner of the Photograph, which stated "© Incredible Features".

21.     Episodes of *The Jim Jeffries Show*, including the Episode containing the Huntress Accused Work, are available for viewing on http://www.cc.com by virtue of a TV Provider account. Episodes of *The Jim Jeffries Show*, including the Episode containing the Huntress Accused Work, are available for purchase on Amazon, Google Play, and iTunes. The segment of the Episode containing the Huntress Accused Work is also available for viewing on both Facebook and YouTube.

22. Mr. Werner or his licensing agent discovered the Huntress Accused Work on or about May 12, 2020.

23. Neither Mr. Werner nor his licensing agent, Incredible Features, ever granted ViacomCBS or its division VMN any license to copy, display, or to use the Huntress Photograph in a derivative work.

**D.  Systemic Piracy Destroys the Value of the Creators' Work.**

24. Mr. Werner conducts business as a syndicator of photo features through his company Incredible Features. The syndication business model is predicated on licensing the use of work in multiple outlets, each of which pays a fee to publish. No single fee can compensate him for his work. The business plan of syndicators depends on multiple sales in the weeks after a feature is released for publication, with occasional licensing thereafter.

25. Actors in the media industries know that repeated, almost instantaneous acts of content piracy destroy the syndication value of the work of content creators like Mr. Werner.

26. VMN's theft of Mr. Werner's work illustrates the process whereby commercial theft of content not only deprives the owner of license fees but also destroys the syndication value of the work. Legitimate publications and networks to which Mr. Werner looks to pay syndication fees are unwilling to pay for work that is already widely disseminated on television and the internet.

**CLAIM ONE**

**(For Copyright Infringement, 17 U.S.C § 501)**

27. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth here.

28. Plaintiff is the author and or/copyright owner of the protected Photograph named above in this Complaint.

29. Defendant has reproduced, displayed, distributed or otherwise copied the Photograph without plaintiff's authorization or license.

30. The foregoing acts of defendant infringed upon the exclusive rights granted to photographers under 17 U.S.C. § 106 to display, reproduce, and distribute their work to the public. Such actions and conduct constitute copyright infringement in violation of 17 U.S.C. §§ 501 et seq.

31. Plaintiff has complied in all respects with 17 U.S.C §§ 101 et seq. and secured and registered the exclusive rights and privileges in and to the copyrights of the above-referenced works in accordance with 17 U.S.C § 408.

32. Plaintiff suffered damages as a result of defendant's unauthorized use of the Photograph.

33. Having timely registered his copyright in the Photograph, plaintiff is entitled to elect statutory damages under 17 U.S.C. § 412 and § 504(c), in an amount of not less than $750 or more than $30,000 per infringement of each work registered before the infringements.

34. Plaintiff alleges, on information and belief, that because of the copyright notice watermark on the upper right-hand corner of the Photograph, defendant knew that the Huntress Photograph was protected by copyright but proceeded to use it regardless. This knowledge will support an award of enhanced statutory damages for willful infringement under the Copyright Act, 17 U.S.C. § 504(c)(2), in the sum of up to $150,000 per infringed work.

35. In the alternative, plaintiff is entitled to recovery of his actual damages and defendant's profits attributable to the infringement of the Photograph, under 17 U.S.C. § 504(b).

36. Within the time permitted by law, plaintiff will make its election between actual damages and profit disgorgement, or statutory damages.

37. Plaintiff is also entitled to a discretionary award of attorney fees under 17 U.S.C. § 412 and § 505.

## CLAIM TWO

### (For Vicarious and/or Contributory Copyright Infringement)

38. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if fully set forth here.

39. If defendant is not liable as the direct infringer of the Photograph, it is secondarily liable for the infringement directly committed by an individual employee, contractor, or other infringers presently unknown (the "Direct Infringers").

40. Defendant contributed to, induced, or assisted infringement by the Direct Infringers. Those Direct Infringers infringed while acting under defendants' direction and control and/or using technology, facilities, and support services provided by defendant.

41. Defendant had, or should have had, knowledge of the infringement of the Direct Infringers. Further, the Photograph was displayed on defendant's television program and defendant was, or should have been, aware of that fact. As the owner of the cable television network, defendant knew or should have known that it did not have licenses to use plaintiff's image on any television program airing on that cable television network.

42. Defendant had the right and ability to supervise the infringing activity that all the Direct Infringers committed because the infringement occurred on its television program and subsequently on its website.

43. Defendant obtained some financial benefit from the infringement of plaintiff's rights in the Photograph because it received revenue from the purchase of episodes containing the copied work and because it received ad revenue from sites that aired segments of the episode. Accordingly, defendants had an incentive to permit and even encourage infringement by the Direct Infringers.

44. As a direct and proximate result of said acts of secondary infringement, plaintiff has suffered substantial damages in an amount to be proven at trial.

45. Plaintiff is entitled to actual damages and disgorgement of direct and indirect profits realized by defendant in an amount to be proven at trial or, at his election, statutory damages.

46. Within the time permitted by law, plaintiff will make his election between actual damages and profit disgorgement, or statutory damages.

47. Plaintiff is further entitled to attorney fees and costs under 17 U.S.C. § 505.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests the following:

A. For a preliminary and permanent injunction against defendants and anyone working in concert with them from further copying, displaying, distributing, selling, or offering to sell plaintiff's Photographs described in the Complaint;

B. For an order requiring defendants to account to plaintiff for their profits and any damages sustained by plaintiff arising from the acts of infringement;

C. As permitted under 17 U.S.C. § 503, for impoundment of all copies of the Photographs used in violation of plaintiff's copyrights—including digital copies or any other means by which they could be used again by the defendants without plaintiff's authorization—as well as all related records and documents.

D. For actual damages and all profits derived from the unauthorized use of plaintiff's Photographs or, where applicable and at plaintiff's election, statutory damages.

E. For an award of pre-judgment interest as allowed by law;

F. For reasonable attorney fees.

G. For court costs, expert witness fees, and all other amounts authorized under law.

H. For such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all issues permitted by law.

Dated: July 3, 2020

Respectfully submitted,

**PERKOWSKI LEGAL, PC**

By:   /s/ Peter Perkowski

Peter E. Perkowski

Attorneys for Plaintiff
JEFFERY R. WERNER